UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNNE LISTON-SMITH, et al.<br>  Plaintiff, | : | |
| | : | CIVIL ACTION NO.<br>3:16-CV-510 (JCH) |
| v. | : | |
| | : | |
| CSAA FIRE & CASUALTY<br>INSURANCE COMPANY,<br>  Defendant. | :<br>:<br>: | DECEMBER 15, 2017 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 30)**

## I. INTRODUCTION

The plaintiffs, Lynne Liston-Smith and John Smith (collectively "the plaintiffs"), bring this action against their homeowner's insurance provider, CSAA Fire & Casualty Insurance Company ("CSAA"), for CSAA's failure to pay for damage to their basement walls. The Complaint (Doc. No. 1-1) alleges breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). On October 25, 2016, the court dismissed Count Two. See Ruling re Mot. to Dismiss (Doc. No. 19).

CSAA has moved for summary judgment (Doc No. 30) as to the two remaining counts. For the reasons that follow, CSAA's Motion for Summary Judgment is granted.

## II. FACTUAL BACKGROUND[1]

The plaintiffs have lived at their home in Tolland, Connecticut since 1996. Local Rule 56(a)1 Statement ("L.R. 56(a)1 Stat.") (Doc. No. 32) at ¶¶ 2, 12. Plaintiffs' home is insured by CSAA. Id. at ¶ 3. Around late summer or fall of 2014, John Smith ("Smith")

---

[1] The following facts are undisputed unless otherwise stated.

1

noticed cracks in his basement wall and alerted his wife, Lynne Liston-Smith ("Liston-Smith"). John Smith Depo. (Oct. 14, 2016), Ex. C to L.R. 56(a)1 Stat. (Doc. No. 32-3) at 7. In August of 2015, the plaintiffs hired an engineer, William Neal, to inspect the cracks in the foundation of their home. Lynne Liston-Smith Depo. (Oct. 14, 2016), Ex. D to L.R. 56(a)1 Stat. (Doc. No. 32-4) at 10. Neal determined that a defect in the concrete, which he later determined to be a chemical reaction, was causing cracks in the walls that would continue to grow until the structure became unstable. William Neal Depo. (Dec. 1, 2016), Ex. E (Doc. No. 32-5) at 12–13.[2] Neal recommended that the concrete foundation be replaced. Id. at 14.

On September 2, 2015, the plaintiffs made a claim to CSAA for damages the chemical reaction had caused to their foundation. L.R. 56(a)1 Stat. at ¶ 13. In a letter dated October 12, 2015, CSAA denied plaintiffs coverage under their home insurance policy ("the Policy"). Id. at ¶ 16.

"Coverage A – Dwelling" in the Policy applies to plaintiffs' home. CSAA Pol'y, Ex. B to L.R. 56(a)1 Stat. (Doc. No. 32-2) at 6. In "Section I – Perils Insured Against," the Policy states, in pertinent part:

We insure against risk of direct physical loss to property described in Coverages A, B and C.

We do not insure, however, for loss:

---

[2] In their Local Rule 56(a)2 Statement, plaintiffs repeatedly qualify their admissions—including Neal's statement in his deposition—with phrases like "[a]dmitted the statement was made," "[a]dmitted though is amongst other claims," and "[a]dmitted insofar as those statements were made." Plaintiffs' Local Rule 56(a)2 Statement is improper and violates the Local Rules.

District of Connecticut Local Civil Procedure Rule 56(a)2 requires that the party opposing a motion for summary judgment respond to facts in the moving party's Local Rule 56(a)1 Statement by "admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." Rule 56(c) permits objections when "material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The caveats plaintiffs place on their admissions frustrate Rule 56(a)'s purpose of clarifying whether a genuine dispute of material fact exists.

A. Under Coverages A, B and C:

    1. Excluded under Section I – Exclusions;

    2. Caused by: . . .

        e. Any of the following:

            1. Wear and tear, marring, deterioration;

            2. Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself; . . .

            6. Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings . . .

Id. at 13–14.

In "Section I – Exclusions," the policy states, in relevant part:

B. We do not insure for loss to property described in Coverages A and B caused by any of the following.  However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered . . . .

    3. Faulty, inadequate or defective:

        a. Planning, zoning, development, surveying, siting;

        b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        c. Materials used in repair, construction, renovation or remodeling; or

        d. Maintenance;

of part or all of any property whether on or off the "residence premises".

Id. at 15–16.

In a section called "E. Additional Coverages," the Policy states, in relevant part:

2. Reasonable Repairs

      a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage . . . .

8. Collapse

    a. This Additional Coverage applies to property covered under Coverages A and B.  With respect to this Additional Coverage:

        1. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

        2. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

        3. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
        4. A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

        1. The Perils Insured Against under Coverages A and B;

        2. Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

        3. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

        4. Weight of contents, equipment, animals or people;

        5. Weight of rain which collects on a roof; or

        6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Id. at 8–10, 28.

In "Section I – Conditions," the Policy states, in relevant part:

G. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss. . . .

H. Policy Period

This policy applies only to loss which occurs during the policy period.

Id. at 18–19.

The plaintiffs filed the instant lawsuit on February 22, 2015, and defendants removed the case to federal court on March 30, 2016. See L.R. 56(a)1 Stat. (Doc. No. 32) at ¶ 1; Notice of Removal (Doc. No. 1).

## III. LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

5

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## IV. DISCUSSION

### A. Count I: Breach of Contract

Under Connecticut law, "construction of a contract of insurance presents a question of law for the court." Lexington Ins. Co. v. Lexington Healthcare Grp., 311 Conn. 29, 37 (2014). An insurance policy "is to be interpreted by the same general rules that govern the construction of any written contract." Zulick v. Patrons Mut. Ins. Co., 287 Conn. 367, 372–73 (2008). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used and interpreted in the light of the situation of the parties and the circumstances connected with the transaction." Murtha v. City of Hartford, 303 Conn. 1, 7 (2011) (quoting Remillard v. Remillard, 297 Conn. 345, 355 (2010)).

Where the language of a contract is unambiguous, a court "must give the contract effect according to its terms." Harbour Pointe, LLC v. Harbour Landing

6

Condominium Ass'n, Inc., 300 Conn. 254, 260 (2011) (quoting Cantonbury Heights Condominium Ass'n Inc. v. Local Land Dev., LLC, 273 Conn. 724, 734–35 (2005). Contract language is unambiguous when "its language is clear and conveys a definite and precise intent." Id. To the extent the language of an insurance policy is ambiguous, such language must be construed against the insurance company, who was the drafter of the policy. See Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co., 247 Conn. 801, 806 (1999).

CSAA argues that the Policy does not cover damage to the plaintiffs' walls for several reasons. First, the loss the plaintiffs identify is not considered a "collapse" under the Policy. See Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Doc. No. 31) at 12–15. Second, the Policy only covers accidental losses, whereas the deterioration of the plaintiffs' walls has been inherent in the concrete since the foundation of the house was laid. See id. at 15–17. Third, coverage for the plaintiffs' claim is barred by several exclusions in the Policy. See id. at 18–24. Fourth, CSAA argues that the plaintiffs' suit is barred by the Policy's two-year suit limitation provision and that the alleged loss from the chemical reaction in the plaintiffs' foundation and basement walls began well before the CSAA Policy period. See id. at 25–28. Because the court agrees with the defendants that the plaintiffs' claim is not covered under the collapse provision and is barred by express exclusions in the Policy, the court does not reach the issue of timeliness.

      1. Collapse

CSAA argues that there is no genuine dispute of material fact that the plaintiffs' home has not collapsed, as defined in the Policy, and is therefore not covered under the

Additional Coverage for collapse. See Defs.' Mem. at 15. Plaintiffs argue that the definition of collapse is ambiguous and that coverage under the collapse provision extends to "substantial impairment of the structural integrity of a building." See Pls.' Mem. of Law in Opp'n to the Defs.' Mot. for Summ. J. ("Pls.' Opp'n") (Doc. No. 37) at 6–7.

The court concludes that the Additional Coverage for collapse does not cover the plaintiffs' home because there has been no collapse, as the provision unambiguously requires. Plaintiffs' own expert stated that the walls had not abruptly fallen down or caved in. See William Neal Depo. (Dec. 1, 2016), Ex. E to L.R. 56(a)1 Stat. (Doc No. 32-5) at 14. Rather, he determined that the walls were deteriorating as a result of a progressive condition, remained upright, and the home was still inhabitable for its intended purpose. Id.

Other Connecticut courts that have looked at insurance policies requiring an abrupt collapse have rejected arguments that the provision was ambiguous or could be interpreted as covering a state short of an abrupt collapse, such as a "substantial structural impairment". See, e.g., Carlson v. Allstate Ins. Co., No. 3:15-cv-01045 (MPS), 2017 WL 4285687, at *6 (D. Conn. Sept. 27, 2017), appeal docketed, No. 17-3501 (2d Cir. Oct. 27, 2017) (finding that the policies unambiguously limited coverage to "sudden and accidental" collapses and therefore the alternative formulation of collapse—a "substantial structural impairment"—did not apply); England v. Amica Mut. Ins. Co., No. 3:16-CV-1951 (MPS), 2017 WL 3996394, at *5 (D. Conn. Sept. 11, 2017) (finding that the policies unambiguously required an abrupt collapse for coverage to apply); Manseau v. Allstate Ins. Inc., No. 3:16-cv-1231 (MPS), 2017 WL 3821791, at *4

8

(D. Conn. Aug. 31, 2017) (granting motion to dismiss where policy defined collapse as "a sudden and accidental direct physical loss"); Adams v. Allstate Ins. Co., No. 3:16-CV-1360 (JBA), 2017 WL 3763837, at *4 (D. Conn. Aug. 29, 2017) (same); Metsack v. Liberty Mut. Fire Ins. Co., No. 3:14-CV-01150 (VLB), 2017 WL 706599, at *8 (D. Conn. Feb. 21, 2017) (granting motion for summary judgment where policy required "a sudden and accidental direct physical loss"); Alexander v. General Ins. Co. of America, No. 3:16-cv-59 (SRU), transcript of oral ruling (Doc. No. 22) at 22–24 (D. Conn. July 7, 2016) (granting motion to dismiss where policy at issue defined collapse as an "abrupt falling down or caving in"); Toomey v. Central Mut. Ins. Co., Docket No. CV-15-6009841-S, 2017 WL 4159820, at *7 (Conn. Super. Ct. Jud. Dist. of Tolland Aug. 3, 2017) (unpublished) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in"); Jemiola v. Hartford Cas. Ins. Co., No. CV-15-6008837-S, 2017 WL 1258778, at *1 (Conn. Super. Ct. Jud. Dist. of Tolland Mar. 2, 2017) (unpublished) (same).

Plaintiffs cite several cases in support of their contention that their walls are in a state of collapse under the Policy, but none of them concerned facts analogous to the condition of the plaintiffs' home or the terms of the Policy. In Malbco Holding, LLC v. Amco Ins. Co., 629 F. Supp. 2d 1185, 1196–97 (D. Or. 2009), the court found the collapse provision ambiguous because it was not clear whether the entire structure had to collapse or a partial collapse was covered. Some sections of a hotel had fallen over three inches and the city was prepared to "red tag" the hotel because of its dangerous physical condition if it was not repaired immediately. Id. at 1191. In contrast, in the

9

instant case, no part of the plaintiffs' home has collapsed, so there is no ambiguity about how extensive a collapse must be to obtain coverage.

Two additional cases cited by the plaintiffs—Dalton v. Harleysville Worcester Mutual, 557 F.3d 88, 92–93 (2d Cir. 2009) and Beach v. Middlesex Mut. Assur. Co., 205 Conn. 246, 250–52 (1987)—interpreted collapse provisions as covering a "substantial impairment of the structural integrity" of a building, but only because the policies at issue, unlike the instant Policy, did not require a collapse to be abrupt. Finally, 130 Slade Condo Ass'n, Inc. v. Millers Capital Ins. Co., Civ. A. No. CCB-07-1779, 2008 WL 2331048, at *5 (D. Md. June 2, 2008), does not support plaintiffs' argument because the 130 Slade court did not decide whether the policy language was ambiguous. Instead, it determined that, under the interpretation of collapse advanced by either party, the plaintiffs were entitled to coverage after a column buckled approximately three inches down and three inches over, the ceiling of the master bedroom separated from the wall, and the building was evacuated for several days until columns were stabilized. Id.

The court concludes, as a matter of law, that plaintiffs are not covered under the Additional Coverage for collapse in the Policy. No part of their home collapsed— abruptly or otherwise—and their entire home can still be occupied for its current intended purpose. Moreover, the Policy expressly excludes from coverage buildings that are in danger of collapse or that remain standing. CSAA Pol'y, Ex. B to L.R. 56(a)1 Stat. (Doc. No. 32-2) at 28. Finally, the Policy specifies that walls that exhibit cracking are not considered to be in a state of collapse. Id. There is no genuine dispute of material fact that the Plaintiffs are not covered for collapse under the Additional Coverage.

2. Chemical Reaction

Plaintiffs argue that the chemical reaction itself is a loss that should be covered under the Policy. See Pls.' Opp'n at 8–10. Plaintiffs also argue that the Policy language does not limit claims to accidental events. See id. at 7–8. Further, they contend that the use of the term "risk" in the Policy includes not only the chemical reaction occurring in the concrete, but risks associated with the chemical reaction, such as collapse. See id. at 9.

CSAA argues that plaintiffs' claim is barred under the Policy because only accidental losses are covered under an all-risk insurance policy. See Defs.' Mem. at 15. The chemical reaction that has caused plaintiffs' walls to crack has been inevitable since the concrete used to construct the foundation and basement walls was poured. See id. Moreover, the consequences of the chemical reaction are barred by numerous exclusions. See id. at 18.

A chemical reaction does not constitute a "direct physical loss" under the Policy. The court finds the reasoning in England, 2017 WL 3996394 at *6–8, instructive. There, Judge Shea found that the use of the term "loss" in a substantially similar policy, the ordinary meaning of "loss," and Connecticut case law all distinguish between a loss and its cause. Id. The chemical reaction is a process that can cause tangible, physical property damage; it does not qualify as a compensable loss in and of itself. Id.

Plaintiffs cite Khuns v. Bay State Ins. Co., 866 N.Y.S.2d 92, at *1–*2 (Sup. Ct. 2008) aff'd, 910 N.Y.S. 2d 822 (2010), in support of their contention that a chemical reaction is not excluded under the Policy, but Khuns bears little resemblance to the instant case. In Khuns, the court determined that an expert's affidavit attributing the

cause of a collapsed wall to rotting mortar arguably brought the loss within the policy's coverage for collapse due to decay, and therefore raised a question of fact for the jury. Id. at *1. Further, the court found that the defendants had not timely asserted certain disclaimers and that, even if they had properly disclaimed coverage on those bases, there were genuine issues of material fact that a collapse occurred and whether the cause of that collapse fell under the exclusion for defective design. Id. at *1–*2. None of the analysis in Khuns relates to plaintiffs' argument that a chemical reaction is covered in and of itself.

Plaintiffs also argue that the use of the term "risk" before "direct physical loss" expands the scope of the Policy. See Pls.' Opp'n at 9. Even if it is assumed that the use of the term "risk" expands the coverage, an exclusion following the coverage for "risk of direct physical loss" bars recovery for "settling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations, walls . . ." The risk of damage to the plaintiffs' home is posed by bulging in the concrete and resultant cracking. See, e.g., Manseau, 2017 WL 3821791 at *4 (determining that cracking plaintiffs alleged fell squarely within the policy language excluding cracking from the definition of collapse); Agosti v. Merrimack Mut. Fire Ins. Co., No. 3:16-cv-01686 (SRU), 2017 WL 3710786, at *3 (D. Conn. Aug. 28, 2017) (finding that, although the insurance policy did not specify that losses caused by chemical reactions are excluded, the express exclusion for loss consisting of or caused by cracking of foundations or walls barred the plaintiffs' loss under that provision of the policy). In addition, coverage for risk also excludes "[f]aulty . . . [m]aterials used in . . . construction . . ." The concrete that is now cracking was faulty at the time it was used in the construction of the plaintiffs' house. See L.R. 56(a)1 Stat.

at ¶¶ 10–11, 26. These two exclusions distinguish the instant Policy and condition of the covered residence from 401 Fourth Street, Inc. v. Investors Ins. Grp., 823 A.2d 177, 178–79 (Pa. Super. 2003), which plaintiffs cite in support of their position and also involved a policy with language about "risks of direct physical loss." The damage in 401 Fourth Street—a parapet wall that was bowed and leaning inward—was not barred by exclusions following the "risk of loss" language, unlike the instant case.

Finally, plaintiffs argue that their costs for replacing the foundation should be covered under the Additional Coverage for reasonable repairs. See Pls.' Opp'n at 10. However, the Policy only pays for the cost of repairs taken "to protect covered property that is damaged by Perils Insured Against from further damage." Because the "risk" plaintiffs identify is not covered under the Policy, the Additional Coverage for reasonable repairs does not apply.[3]

The court concludes that plaintiffs have not raised a genuine issue of material fact as to whether CSAA breached the Policy. The court finds the Policy unambiguous and its terms exclude coverage for the damage to the plaintiffs' walls. Therefore, the court grants CSAA's Motion for Summary Judgment on plaintiffs' breach of contract claim.

---

[3] The parties dispute whether the Policy covers inevitable losses. CSAA argues that an all-risk policy is limited to fortuitous events, see Defs.' Mem. at 15, while plaintiffs argue that the Policy is not limited to fortuitous events, see Pls.' Opp'n at 8. Because the plaintiffs' claim is barred by express exclusions, the court does not reach the question whether the all-risk plan would cover an inevitable loss were it not excluded by specific provisions in the Policy.

The parties also disagree about whether the exclusion for "wear and tear, marring, deterioration, mechanical breakdown, latent defect, inherent vice . . ." bars the plaintiffs' claim. Because the court finds the claim barred on other bases, it does not reach the scope of this exclusion.

B. Count III: CUIPA/CUTPA

CSAA argues that plaintiffs' claim under CUIPA and CUTPA fails as a matter of law because the denial of plaintiffs' insurance claim was proper. See Defs.' Mem. at 29. Further, CSAA argues, plaintiffs have not offered any evidence to suggest that CSAA's allegedly wrongful conduct was part of a general business practice, as is required to bring a claim under CUIPA. See id. at 30–33. Plaintiffs maintain that CSAA violated CUIPA and CUTPA, but they do not provide facts in support of their claim beyond arguing that CSAA wrongly denied them coverage under the Policy and shared information with other insurance companies through the Insurance Services Office, Inc. ("ISO"). See Pls.' Opp'n at 11–12.

CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Conn. Gen. Stat. § 42-110b, while CUIPA defines "unfair methods of competition" in the insurance trade, Conn. Gen. Stat. § 38a-815. CUTPA creates a private right of action for "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . ." Conn. Gen. Stat. § 42-110g(a). Although there is no private right of action under CUIPA, see Bacewicz v. NGM Ins. Co., No. 3:08-CV-1530 (JCH), 2009 WL 1929098, at *2 (D. Conn. June 30, 2009) (citing Lander v. Hartford Life & Annuity Ins. Co., 251 F. 3d 101, 119 (2d Cir. 2001)), a "plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision," Karas v. Liberty Ins. Corp, 33 F. Supp. 3d 110, 117 (D. Conn. 2014).

When CUTPA and CUIPA claims are premised on denial of coverage under an insurance policy and the insurer's interpretation of the policy is correct, "there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation of the statues." Zulick v. Patrons Mut. Ins. Co., 287 Conn. 367, 378 (2008). Because the court concludes that CSAA's denial of coverage was proper, plaintiffs' claim that CSAA's alleged breach of contract was part of a general unfair business practice fails as a matter of law.

Plaintiffs also argue that CSAA's threat to cancel coverage if the plaintiffs did not repair their basement walls presents an issue of fact as to whether CSAA violated CUIPA and CUTPA. See Pls.' Opp'n at 12. In its Ruling re. Mot. to Dismiss, the court dismissed Count Two—breach of the implied covenant of good faith and fair dealing—because, in addition to not alleging facts that would plausibly show bad faith in CSAA's interpretation of the terms of the Policy, plaintiffs did not allege any damages arising from the threatened cancellation, which was later retracted. (Doc. No. 19) at 6. Plaintiffs were given leave to amend the Complaint in accordance with the Ruling, see id. at 6, but did not do so. Without a link between CSAA's threat and any damage to the plaintiffs, the claim under CUTPA and CUIPA lacks proximate cause. See Tucker v. Am. Int'l Grp., Inc., 179 F. Supp. 3d 224, 229–30 (D. Conn. 2016) (noting that CUTPA requires a showing "that the prohibited act was the proximate cause of a harm to the plaintiff") (quoting Abrahams v. Young & Rubicam, 240 Conn. 300, 306 (1997)). Therefore, the court grants CSAA's Motion for Summary Judgment as to plaintiffs' claim under CUIPA and CUTPA.

## V. CONCLUSION

For the foregoing reasons, CSAA's Motion for Summary Judgment is granted.

**SO ORDERED.**

Dated at New Haven, Connecticut this 15th day of December, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
